E-FILED
Friday, 02 October, 2026 04:20:38 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | |
|---|---|
| TY J. BUSHUR,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON LOGISTICS, INC., and THE GOOD NEWS SERVICES CORP.<br><br>Defendants. | Case No.: 2:26-cv-02133-CSB-EIL<br><br>Judge Colin Stirling Bruce<br><br>Mag. Judge Eric I. Long |

**AMAZON LOGISTICS, INC.'S ANSWER TO**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Amazon Logistics, Inc. ("Amazon"), by and through its undersigned counsel, respectfully submits this answer to the First Amended Complaint.

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343, 42 U.S.C. § 12117(a), 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 216(b), and supplemental jurisdiction under 28 U.S.C. § 1367.

**ANSWER**: Amazon admits that this Court has federal question jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 12117(a), 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 216(b), and supplemental jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367, but it denies that such claims are viable. Amazon denies the remaining allegations in Paragraph 1.

2. Venue is proper under 28 U.S.C. § 1391(b). A substantial part of the events giving rise to the claims occurred at or were connected to Amazon WIL4 in Champaign, Illinois, and the relevant employment, delivery, and related events occurred within this District.

**ANSWER**: Amazon admits that the events in the First Amended Complaint are alleged to have occurred within the geographic area encompassed by the Central District of Illinois, and

venue in this Court is proper pursuant to 28 U.S.C. § 1391(b). Amazon denies the remaining allegations in Paragraph 2.

## II. PARTIES

3. Plaintiff Ty J. Bushur is a resident of Illinois and is Asian. He was employed by GNSC and alleges Amazon was his joint employer under the ADA and Title VII, and that GNSC was his employer under the FLSA.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 3 concerning Plaintiff's residence and race and, therefore, denies those allegations. Amazon lacks knowledge or information sufficient to form a belief as to whether Plaintiff was employed by Defendant The Good News Services Corp. ("GNSC") and, therefore, denies that allegation. Amazon denies that Plaintiff was ever an Amazon employee and denies that Amazon jointly employed Plaintiff with GNSC. The remaining allegations in Paragraph 3 constitute conclusions of law to which no response is required. To the extent a response is required, Amazon denies the remaining allegations in Paragraph 3.

4. Defendant Amazon Logistics, Inc. is a Delaware corporation operating last-mile delivery through Delivery Service Partners ("DSPs"). Amazon exercised direct control over DSP drivers through its route-assignment software, Netradyne camera surveillance, performance scoring, Tier-3 Defect and coaching-notification systems, and conduct standards incorporated into DSP handbooks, including onboarding training it required before a driver's first route, an individual driver monitoring account (Mentor) it required Plaintiff to use, and paid on-shift investigations it conducted directly with Plaintiff by name and driver ID.

**ANSWER**: Amazon admits that Defendant Amazon Logistics, Inc. is incorporated in the State of Delaware and that it contracts with Delivery Service Partners ("DSPs"). Amazon denies the remaining allegations in Paragraph 4.

5. Defendant The Good News Services Corp ("GNSC") is an Illinois corporation owned and operated by CEO Edrian Oliver, who identified himself in writing as "the final escalation point" within the company. GNSC served as Plaintiff's nominal direct employer.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 5 and, therefore denies the allegations.

6. Plaintiff alleges Amazon and GNSC jointly employed him. GNSC's CEO confirmed in writing that Amazon's metrics directly affected driver compensation; Amazon issued individual named-driver disciplinary defects, controlled daily routing, monitored drivers via Netradyne, and its coaching notices and Tier-3 Defects were transmitted to GNSC management for action, control over Plaintiff's individual work, compensation, and discipline, not merely general contractual standards.

**ANSWER**: Amazon admits that Plaintiff alleges Amazon and GNSC jointly employed him, but denies that allegation. Amazon lacks knowledge or information sufficient to form a belief as to the alleged contents or meaning of any writing by GNSC's CEO and, therefore, denies those allegations. Amazon denies the remaining allegations in Paragraph 6.

## III. ADMINISTRATIVE EXHAUSTION

7. Plaintiff filed EEOC Charge No. 440-2025-06808 against GNSC on October 21, 2025, and EEOC Charge No. 440-2026-01767 against Amazon on November 22, 2025. The EEOC issued Notices of Right to Sue on February 10, 2026 (Amazon) and April 21, 2026 (GNSC). Both charges, filed 253 and 285 days, respectively, after Plaintiff's February 10, 2025, termination were timely, were processed separately, and produced separate right-to-sue notices.

**ANSWER**: Amazon admits that it received a copy of Charge of Discrimination No. 440-2026-01767 filed by Plaintiff with the EEOC, dated November 11, 2025. Amazon admits that it received a copy of the EEOC's Determination and Notice of Rights, dated February 10, 2026. Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations concerning Plaintiff's separate EEOC Charge against GNSC and the notice issued in connection with that Charge and, therefore, denies those allegations. The remaining allegations in Paragraph 7 constitute conclusions of law to which no response is required. To the extent a response is required, Amazon denies the remaining allegations in Paragraph 7.

8. On April 6, 2024, Plaintiff submitted a Complainant Information Sheet to the Illinois Department of Human Rights against GNSC (Control No. 24M0408.07), constituting protected opposition activity. The EEOC charge later served on GNSC referenced this submission; GNSC's denial of prior management awareness is disputed and is a factual issue for discovery.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 8 and, therefore, denies the allegations.

## IV. FACTUAL BACKGROUND

### A. Employment Background and Amazon's Operational Control

9. Plaintiff was employed by GNSC as a Delivery Associate beginning November 8, 2022, at Amazon's WIL4 station, at $20.50 per hour.

**ANSWER**: Upon information and belief, Amazon admits that Plaintiff was employed by GNSC as a Delivery Associate. Amazon further admits that GNSC operated out of its WIL4 Delivery Station. Amazon lacks knowledge or information sufficient to form a belief as to the alleged start date and rate of pay and, therefore, denies the allegations. Answering further, Amazon denies that Plaintiff was ever an Amazon employee.

10. Amazon's control over Plaintiff's work is documented: CEO Oliver's July 24, 2024, email confirmed Amazon's metrics determined bonus eligibility; Amazon's routing system-controlled delivery addresses; Amazon's Netradyne cameras monitored driver activity; and Amazon's coaching and Tier-3 Defect systems generated individual driver notices sent to GNSC management for action. A Week 51, 2022 scorecard shows Amazon Safety and Compliance metrics made up 35% of a driver's standing and affected compensation and advancement. GNSC's Prime Week incentive policy conditioned bonus eligibility on zero Tier Infractions and zero at-fault accidents — both categories generated by Amazon's own systems, directly tying Amazon's scoring decisions to Plaintiff's pay. In June 2023, Plaintiff complained through Amazon's Mentor/eDriving support that these metrics were biased and could be used to manipulate routes, punish drivers, or affect pay, giving Amazon contemporaneous notice of these concerns.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the alleged contents or meaning of CEO Oliver's July 24, 2024 email and, therefore, denies those allegations. Amazon denies the remaining allegations in Paragraph 10.

### B. Protected Activity and Related Employment Events – July 2023 Through February 2025

11. First Protected Activity, July 12, 2023: Plaintiff filed an internal complaint with Amazon alleging discrimination, harassment, and retaliation by GNSC management. Amazon's On-Road Risk investigator Angela Hawkins-Cooks acknowledged the complaint on July 14, 2023. No later than July 17, 2023, Amazon possessed Plaintiff's written statement in Incident D89047318, in which Plaintiff identified himself as brown, identified a comparator UPS driver as white, and expressly stated he had been discriminated against, giving Amazon direct, written notice of race/color opposition. Plaintiff thereafter experienced route manipulation, schedule reduction, and increased assignment to penalizing routes, including Indiana routes. An established Amazon-GNSC communication channel, including a shared Oliver-associated email address used on Plaintiff's onboarding and subsequent Risk communications, supports an inference that this

notice reached GNSC as well; the precise forwarding and access records are within Defendants' possession.

**ANSWER**: Amazon denies the allegations in the first, second, third, and fifth sentences in Paragraph 11. Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations contained in the fourth sentence of Paragraph 11 and, therefore, denies the allegation.

12. The July 17 written response was part of Amazon's handling of the same complaint Plaintiff placed into Amazon's system on July 12, 2023, not a separate complaint or separate protected activity. Plaintiff alleges the July 12 date identifies the initiation of the complaint, while the later incident-numbered communications and written response reflect Amazon's processing and development of that same complaint and further particularized the race/color basis of the opposition already before Amazon.

**ANSWER**: Denied.

13. Second Protected Activity, Wage Complaints: On January 16, 2024, Plaintiff documented to Operations Manager Jonathon Benison that Amazon's app was misattributing delivery-location errors to him. On July 24, 2024, Plaintiff wrote CEO Oliver that GNSC's All Day Pay methodology used base-station arrival time rather than last-stop time, systematically denying earned early-finish bonuses; Oliver dismissed this as a 'philosophical' difference without investigation.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 13 and, therefore, denies the allegations.

14. Advancement Communications: On March 9 and March 22, 2024, Plaintiff emailed Benison expressing interest in advancement, receiving no substantive response. GNSC's later EEOC statement that Plaintiff [sic]neither applied for nor was denied any position[sic] is materially inconsistent with these communications.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 14 and, therefore, denies the allegations.

15. Fourth Protected Activity, Safety Complaints: Plaintiff reported a Level 2 dog bite on March 4, 2024, and an assault and baseball-bat threat by customer Kris Lawless on September 5, 2024 (Danville PD Case No. 2024-00007350), to both GNSC and Amazon. Despite these reports, routing continued to assign Plaintiff to dangerous locations. Amazon's On-Road Risk Team, through Hawkins-Cooks, individually investigated the September 5 incident by name and driver ID, and five days later, on September 10, 2024, Amazon issued Plaintiff a Tier-3 Defect for 'Unprofessional Behavior,' citing as its evidence the account of the same customer who had

assaulted him. On September 20, 2024, Amazon separately issued a coaching notice for Plaintiff's use of its own 'Unsafe Due to Dog' safety code after routing assigned him to a known dog hazard; CEO Oliver forwarded this to multiple GNSC managers, stating it "negatively impacted his scorecard." Amazon opened similar individualized safety investigations after incidents in November 2023 and February 2024, and Plaintiff's April 2024 follow-up request for records of the earlier dog-attack report went unanswered, together showing a pattern of repeated, individualized Amazon notice preceding the later discipline and termination sequence.

**ANSWER**: Denied.

16. IDHR Protected Activity, April 6, 2024: Plaintiff's Complainant Information Sheet against GNSC alleged retaliation, wage concerns, disparate treatment, and unsafe conditions. The matter was closed without investigation in October 2024, but the submission itself constituted protected opposition activity.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 16 and, therefore, denies the allegations.

17. Sixth Protected Activity, Workers' Compensation, January 22-23, 2025: While making an Amazon delivery, a customer's vehicle backed over Plaintiff's steel-toed-booted foot, causing an involuntary twisting injury to his right leg and a fall; an unidentified witness was present and is subject to identification in discovery. Plaintiff followed a reporting procedure, was treated at Carle Foundation ER at 2:14 AM on January 23 (classified as a Motor Vehicle Collision, listing Benison as company contact), and pursued workers' compensation benefits.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 17 and, therefore, denies the allegations. Answering further, Amazon denies that Plaintiff was ever an Amazon employee or that Amazon jointly employed Plaintiff with GNSC.

**C. Post-Injury Employer Conduct**

18. On January 31, 2025, Plaintiff's written request to Benison for the January 22 Netradyne accident footage was denied; Benison directed him to the insurer and copied Oliver. Its preservation and custody are matters for discovery.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 18 and, therefore, denies the allegations.

19. GNSC's carrier, Nationwide, opened a workers' compensation claim within 48 hours (about 4 days) of the injury. On January 28, 2025, before Plaintiff had given any statement or medical documentation, a Nationwide adjuster left Plaintiff a voicemail stating she would

"conditionally deny" the claim, saying she had only video, indicating the carrier had received video of the incident before receiving Plaintiff's own account.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 19 concerning the alleged actions and statements of Nationwide and, therefore, denies the allegations.

20. GNSC pressed Plaintiff to call the workers compensation carrier during his work shift, treating the call as an assigned light-duty task. On January 27, 2025, CEO Oliver texted: "You are working for me right now, correct? This is what I want you to do now," and directed Plaintiff to make the call from his car and "come back in when completed, and you can go back to monitoring routes". Confirming route monitoring was Plaintiff's light-duty assignment. After Plaintiff retained counsel, Oliver sent repeated escalating messages over January 28-29 demanding Plaintiff personally disclose his attorney's contact information, accusing him of being "unreasonable" for not doing so, evidence of pressure and retaliatory animus surrounding his exercise of workers' compensation rights.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 20 and, therefore, denies the allegations.

### D. Medical Restrictions, Accommodation Dispute, and Termination

21. On January 23, 2025, Safe Works placed Plaintiff on Modified Duty, expressly restricting kneeling, prolonged walking on hard surfaces, and lifting/carrying/pushing/pulling over 10 pounds, confirmed again on February 4, 2025, with GNSC receiving the employer copies. GNSC's later EEOC position statement described the lifting and walking restrictions while omitting the written no-kneeling restriction when discussing the February oil-change assignment below.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 21 and, therefore, denies the allegations.

22. Orthopedic evaluation documented a meniscal tear, ACL degeneration, Grade 2 LCL injury, tendinopathy, partial patellar tendon tear, and Grade 4 chondromalacia, impairments Plaintiff alleges substantially limited walking, kneeling, bending, and lifting and constituted an actual ADA disability.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 22 concerning Plaintiff's alleged medical conditions and limitations and, therefore, denies those allegations. The remaining allegations in

Paragraph 22 constitute conclusions of law to which no response is required. To the extent a response is required, Amazon denies the remaining allegations in Paragraph 22.

23. On February 6, 2025, GNSC assigned Plaintiff a van oil-change task requiring kneeling to enter/exit the vehicle, in violation of his written restriction. Plaintiff objected; GNSC later claimed his doctor had cleared the assignment, but no updated medical documentation was ever presented to Plaintiff, who was not party to that alleged communication. GNSC had assigned this same task two to three prior times after the restriction took effect, and on February 6 at least one uninjured coworker on the same shift received less physically demanding work.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 23 and, therefore, denies the allegations.

24. GNSC's alleged physician-contact justification for the February 6 assignment did not appear in its February 21, 2025, IDES protest and was first raised at the April 2025 ALJ hearing, after Plaintiff's termination. Plaintiff was never provided documentation of an updated medical clearance. Even if driving itself had been medically permissible, that would not resolve the separate written no-kneeling restriction implicated by entering and exiting the van.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 24 and, therefore, denies the allegations.

25. Route monitoring was an available light-duty accommodation GNSC selectively extended and withdrew from Plaintiff, confirmed in writing by Oliver's own January 27 text. During the same period Plaintiff was sent home without pay for declining tasks that violated his restrictions, another injured GNSC associate was assigned route monitoring and permitted to remain at work, the same accommodation Plaintiff sought and had himself previously performed.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 25 and, therefore, denies the allegations.

26. Plaintiff told management on February 6 that he had a restriction-clarification medical appointment scheduled for February 11; Safe Works confirmed that appointment by voicemail on February 10. GNSC terminated Plaintiff that same day, February 10, 2025, one day before the scheduled clarification, and later relied on the resulting documentation gap in its EEOC position statement.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 26 and, therefore, denies the allegations.

27. Plaintiff separately has Hemifacial Microsomia ("HFM"), a congenital condition affecting his facial structure and speech, which he disclosed to GNSC both verbally and in writing during his employment and in the underlying EEOC proceedings.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 27 and, therefore, denies the allegations.

**E. Termination, Pretext, and the University of Illinois Recommendation**

28. GNSC's termination letter stated no reason, and none was given when Plaintiff asked at discharge. GNSC's March 2026 EEOC position statement later cited a cumulative combination of performance issues dating to 2022, the January 22 incident, and the February 6 refusal. Plaintiff alleges this after-the-fact, cumulative explanation, measured against the contemporaneous termination record, supports an inference of pretext. Plaintiff alleges the termination decision was authorized, directed, or ratified by CEO Edrian Oliver as the company's identified final escalation point, or, in the alternative, that managers with retaliatory or discriminatory motive supplied the adverse reports on which any other formal decisionmaker relied without independent investigation; these alternative theories concern the same adverse-action chain and rest on the chronology, Oliver's own written statement of final authority, and decision records within GNSC's control. See Fed. R. Civ. P. 8(d)(2); Staub v. Proctor Hospital, 562 U.S. 411, 421-22 (2011); Johnson v. Accenture LLP, 142 F.4th 536 (7th Cir. 2025) (reiterating that cat's-paw causation requires unlawful animus by a nondecision maker and proximate causation of the adverse action).

**ANSWER**: Amazon admits only that Paragraph 28 includes citations to Federal Rule of Civil Procedure 8(d)(2), *Staub v. Proctor Hospital*, 562 U.S. 411 (2011), and *Johnson v. Accenture* LLP, 142 F.4th 536 (7th Cir. 2025). Amazon denies Plaintiff's characterization or application of those authorities to the extent inconsistent with the authorities themselves or governing law. Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 28 and, therefore, denies the allegations.

29. GNSC's stated reasons for termination materially expanded across successive proceedings: the February 10, 2025, termination letter stated no reason; the February 2025 IDES protest cited two reasons; the April 2025 ALJ proceeding added the alleged undocumented physician-contact justification; and GNSC's March 2026 EEOC position statement expanded the rationale to at least thirteen categories of alleged misconduct, including a disciplinary history dating to December 2022. Plaintiff further alleges that when GNSC was asked about prior warnings during the February 2025 unemployment process, the response was 'Unknown.' Plaintiff alleges that the materially expanding explanations, compared with the contemporaneous termination record, further support an inference of pretext.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 29 and, therefore, denies the allegations.

30. GNSC's March 2026 EEOC position statement also acknowledged in footnote 4 that a Benison statement bearing the date '2/7/2024' and referencing '2/6/2024' contained a typographical error and that the correct date was February 7, 2025. Applying GNSC's own correction places the alleged insubordination immediately before Plaintiff's February 10, 2025, termination and within the immediate post-injury, medical-restriction, and accommodation-dispute period. Plaintiff alleges that this corrected chronology further supports causation and pretext.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 30 and, therefore, denies the allegations.

31. Plaintiff further alleges that GNSC's cumulative-performance rationale is inconsistent with the contemporaneous record. Individual driver scorecards were derived from metrics that fluctuated weekly and did not reflect a stable measure of performance over time. During the same period GNSC now characterizes as reflecting Plaintiff's deficient performance, GNSC's aggregate company rating, a metric that by its nature incorporates each individual driver's performance, including Plaintiff's, remained at "Fantastic Plus" for a sustained, multi-month period. Plaintiff alleges this sustained, favorable aggregate rating is inconsistent with GNSC's later characterization of him as a performance problem and supports an inference that GNSC's stated rationale was pretextual.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 31 and, therefore, denies the allegations.

32. On May 3, 2024, weeks after his IDHR complaint, Plaintiff requested a recommendation letter from Benison for the University of Illinois College of Law's MSL program. On August 18, 2024, Benison responded that only a VP or higher could provide one. On October 14, 2024, CEO Oliver personally submitted the recommendation; the University rejected Plaintiff's application on December 18, 2024, citing 'academic records, recommendations, and work experience.' Plaintiff alleges, on information and belief based on the timing and GNSC's later characterizations of him, that the recommendation contained materially negative or misleading information; its content remains within GNSC's and the University's possession, subject to discovery.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 32 and, therefore, denies the allegations.

## V. CLAIMS FOR RELIEF

### COUNT I Disability Discrimination – Failure to Accommodate ADA, 42 U.S.C. § 12112 – Against GNSC

33. Plaintiff re-alleges all prior paragraphs.

**ANSWER**: Amazon incorporates by reference its responses to Paragraphs 1 through 32 as though fully set forth herein.

34. Plaintiff's documented right-knee impairments substantially limited walking, kneeling, bending, and lifting. GNSC knew of his written restrictions, placed him on modified duty, and had assigned route monitoring as light-duty work. Plaintiff alleges GNSC failed to engage in a good-faith interactive process, assigned work conflicting with his documented restrictions, sent him home without pay, and terminated him one day before his scheduled restriction-clarification appointment, while concurrently providing the same route-monitoring accommodation to another injured coworker. See 42 U.S.C. § 12112(b)(5)(A); Beck v. University of Wisconsin Board of Regents, 75 F.3d 1130, 1135-36 (7th Cir. 1996) (explaining that courts should isolate the cause of an interactive-process breakdown and assign responsibility when a party obstructs, delays, or fails to communicate in good faith).

**ANSWER**: Plaintiff expressly asserts Count I and the allegations in Paragraph 34 against Defendant GNSC only and, therefore, no response from Amazon is required.

### COUNT II Disability Discrimination ADA, 42 U.S.C. § 12112 – Against Both Defendants

35. Plaintiff re-alleges all prior paragraphs.

**ANSWER**: Amazon incorporates by reference its responses to Paragraphs 1 through 34 as though fully set forth herein.

36. GNSC terminated Plaintiff nineteen days after his workplace injury and one day before his scheduled medical appointment, expressly citing his conduct during that incident in its EEOC position statement. Plaintiff alleges this framing, combined with repeated conflicting work assignments and the withdrawal of light duty, supports an inference that his disability or perceived impairment was a causal factor in the termination. Amazon's liability is alleged only to the extent its joint-employer status is established.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in the first sentence of Paragraph 36 and, therefore, denies those allegations. The remaining allegations in Paragraph 36 constitute conclusions of law to

which no response is required. To the extent a response is required, Amazon denies the remaining allegations in Paragraph 36. Answering further, Amazon denies that Plaintiff was ever an Amazon employee or that Amazon jointly employed Plaintiff with GNSC.

**COUNT III Retaliation ADA, 42 U.S.C. § 12203 – Against Both Defendants**

37. Plaintiff re-alleges all prior paragraphs.

**ANSWER**: Amazon incorporates by reference its responses to Paragraphs 1 through 36 as though fully set forth herein.

38. Plaintiff's requests for accommodation, and his objections to assignments conflicting with his restrictions, were ADA-protected activity. GNSC terminated him shortly after. The tight injury-restriction-accommodation-termination sequence, GNSC's omission of the no-kneeling restriction in its later defense of the oil-change assignment, and its cumulative post-hoc termination rationale support an inference that this activity was a but-for cause of termination.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 38 concerning Plaintiff's alleged accommodation requests, objections, GNSC's conduct, and termination and, therefore, denies the allegations. To the extent Paragraph 38 asserts any claim or theory against Amazon, Amazon denies the allegations.

**COUNT IV – Retaliation Title VII, 42 U.S.C. § 2000e-3 – Against Both Defendants**

39. Plaintiff re-alleges all prior paragraphs.

**ANSWER**: Amazon incorporates by reference its responses to Paragraphs 1 through 38 as though fully set forth herein.

40. Plaintiff's July 2023 internal complaint to Amazon and his April 2024 IDHR submission constituted Title VII-protected activity preceding the adverse actions alleged through February 2025. His later 2025 EEOC charges are additional protected activity as to any post-charge retaliation. The documented chronology and pretext facts pleaded above support causation.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 40 concerning Plaintiff's alleged July 2023

internal complaint and April 2024 IDHR submission against GNSC and, therefore, denies those allegations. The remaining allegations in Paragraph 40 constitute conclusions of law, to which no response is required. To the extent a response is required, and to the extent Paragraph 40 asserts any claim or theory against Amazon, Amazon denies the remaining allegations in Paragraph 40.

**COUNT V – Race and Color Discrimination Title VII, 42 U.S.C. §§ 2000e-3 – Against Both Defendants**

41. Plaintiff re-alleges all prior paragraphs.

**ANSWER**: Amazon incorporates by reference its responses to Paragraphs 1 through 40 as though fully set forth herein.

42. Plaintiff is Asian, a protected class under Title VII. GNSC's WIL4 workforce was predominantly non-Asian, most coworkers being Black. Plaintiff was subjected to disparate treatment in assignments, light-duty availability, advancement, compensation, and discipline. Comparator proof, workforce composition, assignment, and discipline records for similarly situated employees, is principally within Defendants' possession and will be developed in discovery.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 42 concerning Plaintiff's race and the racial composition of GNSC's workforce and, therefore, denies those allegations. Amazon denies the remaining allegations in Paragraph 42.

43. Plaintiff further alleges that route sheets assigned to him, reflecting van number, tote count, and package volume, consistently reflected substantially higher package volume than route sheets bearing the names of coworkers whom Plaintiff observed to be African American, and that this pattern was consistent over a sustained period of his employment, a pattern Plaintiff alleges reflects race-based disparity in workload assignment, subject to confirmation through Defendants' route-assignment and personnel records in discovery.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 43, concerning Plaintiff's observations of coworkers' races and the alleged comparison of route sheets, and, therefore, denies the allegations. Amazon denies the remaining allegations in Paragraph 43.

**COUNT VI – Wage Retaliation FLSA, 29 U.S.C. § 215(a)(3) – Against GNSC**

44. Plaintiff re-alleges all prior paragraphs.

**ANSWER**: Amazon incorporates by reference its responses to Paragraphs 1 through 43 as though fully set forth herein.

45. Plaintiff's July 24, 2024, written complaint to CEO Oliver about denied All Day Pay compensation was protected by wage-and-hour activity that put GNSC on notice. His termination was, in part, retaliation for making it. Plaintiff seeks relief under the FLSA to the extent of discovery establishing regular-rate, minimum-wage, or overtime consequences from the challenged methodology.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 45, which are directed at Defendant GNSC and, therefore, denies the allegations.

**AMAZON JOINT-EMPLOYER ALLEGATIONS Liability Theory Incorporated Into Counts II-V Title VII and ADA – Against Amazon**

46. Plaintiff re-alleges the relevant prior paragraphs to establish Amazon's status as a joint employer; this section states a liability theory and seeks no separate relief. For clarity, Plaintiff pleads two potentially overlapping causation paths: (1) the GNSC management chain described in paragraph 28, including a conventional cat's-paw theory if a biased nondecision maker caused the formal decisionmaker to act; and (2) Amazon's worker-specific inputs into GNSC compensation, discipline, and termination decisions as alleged in paragraphs 47-48. These theories are pleaded in the alternative and depend on discovery concerning knowledge, authorship, transmission, and reliance.

**ANSWER**: Amazon incorporates by reference its responses to Paragraphs 1 through 45 as though fully set forth herein. Amazon admits that Plaintiff purports to plead two alternative causation theories in Paragraph 46. Amazon denies that Plaintiff was ever employed by Amazon or that Amazon was Plaintiff's joint employer, denies that Amazon violated any law or otherwise caused any actionable injury to Plaintiff, and denies the remaining allegations in Paragraph 46.

47. Amazon is alleged to be Plaintiff's joint employer under the Seventh Circuit's five-factor framework; control being the most principal factor. See Stokes v. Illinois Department of Corrections, No. 25-1116, slip op. at 7-9 (7th Cir. July 31, 2026). Amazon's worker-specific control includes: its metrics' direct effect on driver compensation; its named-driver Tier-3 Defects and coaching notices transmitted to GNSC for action; its control of daily routing; Netradyne

monitoring; its incorporation into GNSC policy; its processing of Plaintiff's July 2023 complaint; and Amazon's direct, individualized September 2024 outreach to Plaintiff by name and driver ID. Unlike in Stokes, where the investigating entity did not itself impose discipline, Amazon's individualized investigation of the September 5, 2024, incident was followed five days later by Amazon's own named-driver Tier-3 Defect from that same incident, supporting the joint-employer inference. See Stokes, slip op. at 9-10; Frey v. Hotel Coleman, 903 F.3d 671, 676-77 (7th Cir. 2018).

**ANSWER**: Amazon admits that Paragraph 47 includes citations to *Stokes v. Illinois Dep't of Corr.*, 183 F.4th 947 (7th Cir. 2026), and *Frey v. Hotel Coleman*, 903 F.3d 671, 676-77 (7th Cir. 2018). Amazon denies Plaintiff's characterization or application of those authorities to the extent inconsistent with the authorities themselves or governing law. Amazon also admits that Plaintiff alleges Amazon was his joint employer. Amazon denies that it was Plaintiff's employer or joint employer, denies that it violated any law or otherwise caused any actionable injury to Plaintiff and, denies the remaining allegations in Paragraph 47.

48. Plaintiff alleges Amazon's worker-specific outputs, its Risk, routing, scorecard, coaching, and defect records, were not passive vendor data but were designed for transmission to and use by GNSC in Plaintiff's compensation, discipline, and termination record, placing Amazon-generated records inside the adverse-decision chain. In the alternative, if an Amazon employee with knowledge of Plaintiff's protected complaints generated a negative record with retaliatory or discriminatory motive intending GNSC to act on it, and GNSC did so rely, that Amazon input was a proximate cause of the resulting action. See Fed. R. Civ. P. 8(d)(2). Which personnel could see Plaintiff's protected complaints, and who approved each defect or coaching record, are matters for discovery. This Amazon-to-GNSC pathway is pleaded as proximate causation tied to Amazon's alleged joint-employer participation and worker-specific control, distinct from the conventional subordinate-to-decisionmaker cat's-paw pathway alleged within GNSC's own management chain.

**ANSWER**: Amazon admits that Paragraph 48 includes citations to Federal Rule of Civil Procedure 8(d)(2). Amazon denies Plaintiff's characterization or application of this rule to the extent inconsistent with the Rule. Amazon further admits that Plaintiff alleges the alternative theory described in Paragraph 48. Amazon denies that it was Plaintiff's employer or joint employer, denies that it violated any law or otherwise caused any actionable injury to Plaintiff, and denies the remaining allegations in Paragraph 48.

**COUNT VII – Retaliation Concerning University of Illinois Recommendation Title VII, 42 U.S.C. § 2000e-3 – Against GNSC**

49. Plaintiff re-alleges all prior paragraphs.

**ANSWER**: Amazon incorporates by reference its responses to Paragraphs 1 through 48 as though fully set forth herein.

50. Plaintiff engaged in protected EEO activity before Oliver submitted the October 14, 2024, recommendation. Plaintiff alleges, on information and belief, that it contained negative or misleading information materially affecting his educational opportunity, which, if established, is a materially adverse retaliatory act. See Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006).

**ANSWER**: Plaintiff expressly asserts Count VII and the allegations in Paragraph 50 against Defendant GNSC only and, therefore, no response from Amazon is required.

**COUNT VIII – Retaliatory Discharge for Exercise of Workers' Compensation Rights Illinois Common Law; 820 ILCS 305/4(h) — Against GNSC**

51. Plaintiff re-alleges all prior paragraphs.

**ANSWER**: Amazon incorporates by reference its responses to Paragraphs 1 through 50 as though fully set forth herein.

52. Plaintiff exercised rights under the Illinois Workers' Compensation Act following his January 22, 2025, injury. Before he had given a statement, the carrier signaled conditional denial while already possessing video; GNSC pressed him to handle the claim as a work assignment; and GNSC terminated him on February 10, 2025, while treatment and restrictions remained active. Illinois recognizes a common-law retaliatory-discharge claim where discharge is causally related to exercising these rights. See Kelsay v. Motorola, Inc., 74 Ill. 2d 172, 181-82 (1978).

**ANSWER**: Plaintiff expressly asserts Count VIII and the allegations in Paragraph 52 against Defendant GNSC only and, therefore, no response from Amazon is required.

53. The short interval between injury and discharge, the imminent Safe Works and physical-therapy appointments, and Oliver's January 27-29 communications together support an inference of causation.

**ANSWER**: Plaintiff expressly asserts Count VIII and the allegations in Paragraph 53 against Defendant GNSC only and, therefore, no response from Amazon is required.

**COUNT IX – Wage Payment and Retaliation Illinois Wage Payment and Collection Act, 820 ILCS 115/2, 5, 14(a), and 14(c) — Against GNSC**

54. Plaintiff re-alleges all prior paragraphs.

**ANSWER**: Amazon incorporates by reference its responses to Paragraphs 1 through 53 as though fully set forth herein.

55. GNSC's All Day Pay methodology and denial of earned bonuses constituted underpayment of wages or final compensation owed under the IWPCA. Plaintiff seeks unpaid amounts and statutory relief under 820 ILCS 115/14(a).

**ANSWER**: Plaintiff expressly asserts Count IX and the allegations in Paragraph 55 against Defendant GNSC only and, therefore, no response from Amazon is required.

56. Plaintiff also alleges retaliation under 820 ILCS 115/14(c): his documented complaint to Oliver about unpaid compensation was followed by adverse treatment and termination, which Section 14(c) expressly prohibits.

**ANSWER**: Plaintiff expressly asserts Count IX and the allegations in Paragraph 56 against Defendant GNSC only and, therefore, no response from Amazon is required.

**COUNT X Whistleblower Retaliation Illinois Whistleblower Act, 740 ILCS 174/15, 20, and 30 — Against GNSC**

57. Plaintiff re-alleges all prior paragraphs.

**ANSWER**: Amazon incorporates by reference its responses to Paragraphs 1 through 56 as though fully set forth herein.

58. Plaintiff made documented safety disclosures, the dog bite, the baseball-bat assault (also reported to Danville police), and an unsafe vehicle in winter conditions. On the relevant winter workday, GNSC reassigned Plaintiff's route without discussion and put him in a van with visibly bald tires; the van lost traction on a flat, snow-covered driveway, and GNSC disciplined him for the resulting incident rather than addressing the vehicle's condition. Plaintiff alleges GNSC inconsistently enforced vehicle-safety standards, at times documenting defects, at other times ignoring them to avoid grounding a vehicle and losing the route, while treating his own safety and medical-restriction objections as insubordination. Vehicle-inspection, defect, and repair records bearing on this pattern are principally within Defendants' possession. Plaintiff pleads protection under the applicable version of the Illinois Whistleblower Act for each disclosure. See 740 ILCS 174/15(a)-(c).

**ANSWER**: Plaintiff expressly asserts Count X and the allegations in Paragraph 58 against Defendant GNSC only and, therefore, no response from Amazon is required.

**COUNT XI Tortious Interference With Prospective Economic Advantage Illinois Common Law — Against GNSC, through CEO Edrian Oliver**

59. Plaintiff re-alleges all prior paragraphs.

**ANSWER**: Amazon incorporates by reference its responses to Paragraphs 1 through 58 as though fully set forth herein.

60. Plaintiff had a reasonable expectancy of admission to the University of Illinois College of Law's MSL program. Oliver submitted his recommendation while Plaintiff's IDHR matter was pending and after his protected activity. Plaintiff alleges, on information and belief based on timing and GNSC's later characterizations of him, that the recommendation contained materially false or negative information intended to interfere with that prospective relationship, causing the loss of the opportunity and resulting economic harm.

**ANSWER**: Plaintiff expressly asserts Count XI and the allegations in Paragraph 60 against Defendant GNSC only and, therefore, no response from Amazon is required.

**COUNT XII Biometric Information Privacy Act Violations 740 ILCS 14/15(a), 15(b), 15(d), and 20 — Against Amazon**

61. Plaintiff re-alleges all prior paragraphs.

**ANSWER**: Amazon incorporates by reference its responses to Paragraphs 1 through 60 as though fully set forth herein.

62. Amazon collected Plaintiff's biometric identifiers through systems mandated for his employment: its Netradyne in-vehicle camera system, and its delivery-confirmation application requiring facial-recognition-based identity verification. Netradyne's own public materials describe its Visual Login System ("VLS") as authenticating drivers from facial images and associating drive time with the driver. Plaintiff alleges, on information and belief, that Amazon or its DSP enabled VLS or an equivalent facial-authentication function in his assigned vehicles, an inference drawn from the attribution of camera events, driving data, and scorecard effects to Plaintiff as a named driver with unique identifiers. Whether and when VLS was enabled, and which entity configured or received the resulting data, are matters shown by device-configuration and transmission records within Amazon's, GNSC's, and Netradyne's possession. Plaintiff's claim rests on the alleged scan or processing of face geometry to identify him, not on the mere existence of ordinary photographs or video. See 740 ILCS 14/10; Svoboda v. Amazon.com, Inc., No. 25-1361, slip op. at 10-11 (7th Cir. Dec. 17, 2025), amended Mar. 6, 2026.

**ANSWER**: Amazon lacks knowledge or information sufficient to form a belief regarding the truth of the allegation in the second sentence of Paragraph 62 concerning Netradyne's public materials and, therefore, denies that allegation. Amazon denies the remaining allegations in Paragraph 62.

63. Amazon's collection, use, and disclosure of this biometric data occurred without a publicly available retention schedule (740 ILCS 14/15(a)), without the required written notice and consent before collection (740 ILCS 14/15(b)), and with disclosure to third parties including Netradyne without informed written consent (740 ILCS 14/15(d)). Amazon's violations were intentional, reckless, or in the alternative negligent. Plaintiff seeks the statutory and equitable remedies authorized by 740 ILCS 14/20, as amended, and, consistent with Clay v. Union Pacific Railroad Co., Nos. 25-2185 et al., slip op. at 17 (7th Cir. Apr. 1, 2026) (holding the 2024 Section 20 amendment applies retroactively), does not seek per-scan damages for repeated collection from the same person by the same method.

**ANSWER**: Denied.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against both Defendants, jointly and severally where applicable, for:

a. Compensatory damages for lost wages, back pay, front pay or reinstatement, lost benefits, and lost earning capacity;

b. Compensatory damages for lost educational opportunity, including the value of the MSL degree and associated career advancement;

c. Compensatory damages for emotional distress, humiliation, damage to professional reputation, and pain and suffering;

d. Punitive damages for Defendants' intentional, willful, and malicious violations;

e. Statutory damages and other relief under 740 ILCS 14/20 against Amazon;

f. Reinstatement or, in the alternative, front pay;

g. Reasonable attorneys' fees and costs under 42 U.S.C. § 12205, 42 U.S.C. § 2000e-5(k), and 29 U.S.C. § 216(b);

h. Pre- and post-judgment interest;

i. Evidentiary, preservation, or sanctions relief under Fed. R. Civ. P. 37(e) as warranted;

j. An injunction against further discrimination, retaliation, or harassment;

k. Statutory penalties and other relief under the IWPCA and Illinois Whistleblower Act;

l. Such other and further relief as this Court deems just and proper.

**ANSWER**: Amazon admits that Plaintiff purports to seek the relief set forth in the WHEREFORE clause following Paragraph 63, but it denies all allegations set forth in each and every subparagraph of that clause, denies that it violated any statute or engaged in unlawful conduct, and denies that Plaintiff is entitled to any type of remedy, relief, or damages, including the relief requested therein.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 and the Seventh Amendment, Plaintiff demands a trial by jury on all issues so triable.

**ANSWER**: Amazon admits that Plaintiff has demanded a trial by jury on all issues so triable. Amazon denies any remaining allegations to the extent a response is required and reserves all rights concerning the mode and scope of trial.

## GENERAL DENIAL

Amazon denies each and every allegation contained in the First Amended Complaint that is not specifically admitted herein.

## AFFIRMATIVE AND OTHER DEFENSES

Without conceding that it bears the burden of proof or persuasion as to any of them, Amazon asserts the following separate defenses to Plaintiff's First Amended Complaint:

1. Insofar as Plaintiff's causes of action against Amazon are based on an alleged employment relationship, they are barred in whole or in part because no such employment relationship existed as Amazon never employed Plaintiff.

2. The First Amended Complaint fails, in whole or in part, to state a claim upon which relief can be granted against Amazon.

3. Plaintiff was employed by GNSC, not Amazon. Amazon was not Plaintiff's employer or joint employer and did not make or control the employment decisions challenged in the First Amended Complaint.

4. Amazon lacked actual or constructive knowledge of the conduct alleged in the First Amended Complaint or of any alleged wrongdoing by any of the other defendants or other persons.

5. Plaintiff's claims are barred, in whole or in part, by applicable statutes of limitations, administrative charge-filing periods, and other timeliness requirements, including to the extent Plaintiff seeks relief under Title VII or the ADA based on discrete acts occurring outside the applicable charge-filing period.

6. Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

7. Plaintiff's claims are barred, in whole or in part, by the doctrines of laches and estoppel.

8. Plaintiff cannot properly recover damages under multiple or different theories or causes of action for the same or similar alleged acts/conduct/omissions.

9. Any recovery by Plaintiff is barred on the grounds that, as to each and every oral, implied, or other contract alleged, there was a failure of consideration and/or lack of mutual consent.

10. To the extent Plaintiff seeks to recover civil penalties that are disproportionate to the actual harm suffered, if any, an award of civil penalties under the circumstances of this case would constitute an excessive fine and otherwise would be in violation of Amazon's due process and other rights under the United States and Illinois Constitutions.

11. Plaintiff's claims are barred, in whole or in part, because Plaintiff has not appropriately or adequately mitigated his alleged harm/damages, if any. Further, the sought-after

damages/harm and penalties, if any, as to Plaintiff must be reduced because Plaintiff failed to take advantage of any preventative or corrective safeguards or otherwise to avoid harm.

12. Plaintiff's claims are barred, in whole or in part, because he failed to exhaust his administrative remedies.

13. To the extent that Plaintiff has received any income from other employment or any other sources, such monies must be offset against any damages allegedly due to Plaintiff from Amazon.

14. At all times and places mentioned in the First Amended Complaint, Amazon acted without malice and with a good faith belief in the propriety of its conduct.

15. To the extent during the course of this litigation Amazon acquires any evidence of additional wrongdoing by Plaintiff, which wrongdoing would have materially affected the terms and conditions of Plaintiff's employment, such after acquired evidence shall bar Plaintiff on liability or damages or shall reduce any right to relief as provided by law.

16. If any damages and/or penalties are recovered by Plaintiff, although entitlement to such is expressly denied, Amazon is entitled under the equitable doctrine of setoff and recoupment to offset all overpayments and/or all other obligations of Plaintiff owed to Amazon against any damages and/or penalties that may be awarded against Amazon.

17. Plaintiff is not entitled to recover any statutory penalties against Amazon. If penalties are awarded, such penalties should be reduced because, under the circumstances of this case, any such recovery would be unjust, arbitrary, oppressive, and/or confiscatory.

18. Plaintiff's claims are barred to the extent Amazon acted in good faith reliance on an administrative regulation, order, ruling and/or interpretation of a state or federal government

agency, including but not limited to the United States Department of Labor and/or the administrative agencies in any jurisdictions in which Plaintiff resides or purports to reside.

19. Plaintiff lacks standing as to some or all of the claims alleged.

20. Amazon exercised reasonable care to prevent and promptly correct any alleged discriminatory conduct, by, among other things, providing regular training to supervisors and managers regarding Amazon's policies against discrimination, harassment and retaliation.

21. Plaintiff's claims are barred in whole or in part because Plaintiff was not terminated in violation of any fundamental well-established public policy embodied in law or statute. Plaintiff was an at-will employee and was terminated for legitimate, non-discriminatory and non-retaliatory reasons.

22. Amazon cannot be liable for punitive damages to Plaintiff, including without limitation, because any wrongful conduct that Plaintiff may prove to have suffered was contrary to Amazon's good faith efforts to comply with the law and prevent discrimination, harassment and retaliation in the workplace, and because Amazon did not act with malice or reckless indifference to Plaintiff's legally protected rights. This includes, without limitation, that Amazon has policies against discrimination, harassment and retaliation.

23. An award of punitive damages under the circumstances of this case would constitute an excessive fine and otherwise would be in violation of Amazon's due process and other rights under the United States Constitution, including without limitation, because Amazon has policies against discrimination, harassment, and retaliation.

24. An award of punitive damages is unavailable under the circumstances of this case for some or all of the causes of action Plaintiff alleges, including under Title VII and the ADA.

25. Any emotional distress allegedly suffered by Plaintiff was not caused by Amazon or any of its agents.

26. Plaintiff's claims are barred or diminished to the extent he has failed to minimize or mitigate his damages.

27. Plaintiff's claims are barred in whole or in part because all of Amazon's actions that Plaintiff challenges were lawful, justified by legitimate, non-discriminatory/non-retaliatory reasons, and were carried out in furtherance of Amazon's legitimate business reasons.

28. Plaintiff's First Amended Complaint and each and every cause of action contained therein are barred, in whole or in part, because to the extent Plaintiff has incurred any damages, which Amazon expressly denies, such alleged damages were not proximately caused or legally caused by Amazon.

29. The First Amended Complaint and each and every cause of action contained therein are barred, in whole or in part, because the alleged wrongful or discriminatory conduct was not intentional.

## RESERVATION OF RIGHTS

Amazon reserves the right to assert such additional defenses that may appear and prove applicable during the course of the litigation.

WHEREFORE, having fully answered the First Amended Complaint, Amazon respectfully prays that this Court enters judgment in its favor and against Plaintiff, dismisses all claims asserted against Amazon in the First Amended Complaint, awards Amazon its costs incurred in this action, including attorneys' fees, and order such other and further relief as the Court deems just and proper.

Dated: October 2, 2026

Respectfully Submitted,

*/s/Jeronimo Simonovis*

Stephanie L. Sweitzer
Jeronimo Simonovis
**Morgan, Lewis & Bockius LLP**
110 North Wacker Drive, Suite 2800
Chicago, IL 60606
(312) 324-1000
(312) 324-1001 (fax)
stephanie.sweitzer@morganlewis.com
jeronimo.simonovis@morganlewis.com

*Counsel for Defendant Amazon Logistics, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2026, the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/Jeronimo Simonovis*
Jeronimo Simonovis