E-FILED
Friday, 16 October, 2026 04:25:30 PM
Clerk, U.S. District Court, ILCD

FILED
OCT 16 2026
CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

TY J. BUSHUR )
Plaintiff, )
)
v. ) Case No. 2:26-cv-02133-CSB-EIL
)
AMAZON LOGISTICS, INC. and )
THE GOOD NEWS SERVICES CORP. )
)
Defendants. )

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT THE GOOD NEWS SERVICES CORP.'S MOTION FOR PARTIAL DISMISSAL (COUNTS VI, VII, AND XI)**

Plaintiff Ty J. Bushur, proceeding pro se, responds in opposition to the Motion for Partial Dismissal (Counts VI, VII, and XI) (Dkt. 17) and supporting Memorandum (Dkt. 18) filed by Defendant The Good News Services Corp. ("GNSC"). For the reasons below, the Motion should be denied.

## INTRODUCTION

GNSC moves to dismiss three of the eleven counts asserted against it. (Dkt. 17 ¶ 1.) It answered the remaining counts, which arise from the same employment relationship and the same events, and denied their allegations. (Dkt. 19.) The remaining counts are not the basis for this Motion. Plaintiff addresses the independent pleading requirements for each of the three challenged counts below.

GNSC's principal theme is that Counts VII and XI are "speculation" about an "unseen recommendation letter." (Dkt. 17 ¶¶ 3–4; Dkt. 18 at 4–6.) GNSC's Answer confirms that a performance-related communication occurred, although the parties dispute its contents and purpose. GNSC admits that Plaintiff requested a letter of recommendation and that GNSC "provided a memorandum of record dated October 11, 2024, of Plaintiff's trailing six-week

performance." (Dkt. 19 ¶ 32.) GNSC also asserts, as an affirmative defense, that "any communications by GNSC to the University of Illinois College of Law's MSL Program [are] protected by privilege." (Dkt. 19 Aff. Def. 5.) The actual contents and circumstances of that communication are principally within GNSC's knowledge. That is relevant to information-and-belief pleading but does not itself establish falsity, retaliatory intent, or causation. The challenged counts must be evaluated under their respective legal standards.

## RELEVANT ALLEGATIONS AND RECORD

GNSC hired Plaintiff as a Delivery Associate on or about November 16, 2022. (Dkt. 19 ¶ 9.) Edrian Oliver is GNSC's Chief Executive Officer. (*Id.* ¶ 5.) Plaintiff alleges that he submitted a Complainant Information Sheet to the Illinois Department of Human Rights ("IDHR") and that this submission was protected activity. (First Am. Compl. ("FAC") ¶ 8.) GNSC denies knowledge of that submission. (Dkt. 19 ¶ 8.)

Plaintiff alleges that on July 24, 2024, he complained to Mr. Oliver about GNSC's "All Day Pay" bonus methodology, specifically whether early-finish bonuses should be measured from last-stop time rather than base-station arrival time. (FAC ¶¶ 13, 45; see Dkt. 18 at 3.) Count VI alleges that this complaint was protected under the Fair Labor Standards Act ("FLSA") and seeks relief including "regular-rate, minimum-wage, or overtime consequences." (FAC ¶ 45.)

Plaintiff requested a letter of recommendation for his application to the University of Illinois College of Law's Master of Studies in Law ("MSL") program. (FAC ¶ 32; Dkt. 19 ¶ 32.) Plaintiff alleges, on information and belief, that Mr. Oliver's October 14, 2024 recommendation contained negative or misleading information that materially affected his educational opportunities. (FAC ¶¶ 50, 60.) The University rejected Plaintiff's application, citing "academic records, recommendations, and work experience." (FAC ¶ 32.) GNSC admits that it provided a

"memorandum of record dated October 11, 2024, of Plaintiff's trailing six week performance," and denies that the memorandum contained materially negative or misleading information. (Dkt. 19 ¶ 32.)

Plaintiff further explains the circumstances of his request. Before the October 2024 submission, Plaintiff met with Mr. Oliver about obtaining a recommendation for the MSL program. Plaintiff told Oliver that he wanted to do his job and needed a reference for the program. Oliver responded, "the ball is in your court." Plaintiff understood that response to mean he was expected to follow company rules going forward. This is additional context for the recommendation allegations in the FAC; Plaintiff does not claim that Oliver's remark, by itself, reveals what GNSC later wrote in the performance memorandum. (FAC ¶¶ 32, 50, 60.)

GNSC terminated Plaintiff's employment on February 10, 2025. (Dkt. 19 ¶ 26.) GNSC admits that it provided reasons for the termination to the Equal Employment Opportunity Commission ("EEOC"), and that "a typographical error was acknowledged in the position statement." (*Id.* ¶¶ 28, 30.)

Plaintiff filed a Charge of Discrimination with the EEOC, No. 440-2025-06808, which GNSC attached to its Memorandum. (FAC ¶ 7; Dkt. 19 ¶ 7; Dkt. 18-1.) The Charge states that Plaintiff filed a discrimination complaint with the IDHR and that "[a]fter that filing, my working conditions worsened and management became increasingly hostile." (Dkt. 18-1.) It states that "[t]he retaliation continued through my termination on February 10, 2025," and that "these actions were retaliation for my prior IDHR complaint and for requesting accommodations related to my injury." (*Id.*)

## LEGAL STANDARD

A complaint survives a Rule 12(b)(6) motion if it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts well-pleaded facts as true and draws reasonable inferences in the plaintiff's favor. *Id.* GNSC agrees that pro se pleadings are construed liberally. (Dkt. 18 at 1 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).) A pro se complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citation omitted).

GNSC states that a claim "must nevertheless be dismissed if the facts are equally consistent with a finding of no liability." (Dkt. 18 at 2.) That overstates the standard. The plausibility standard "is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). A plaintiff need not show that his account is more likely than the defendant's, and the existence of an alternative explanation does not defeat a plausible claim. See *Swanson v. Citibank*, N.A., 614 F.3d 400, 404–05 (7th Cir. 2010). At this stage the question is what the plaintiff has alleged, not what he can yet show. *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005). A plaintiff opposing a motion to dismiss may also elaborate on his allegations with facts consistent with the complaint. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

## ARGUMENT

### A. Count VI States an FLSA Retaliation Claim Based on Complaints About Compensable Time and Pay.

The FLSA prohibits retaliation against an employee who has "filed any complaint" asserting rights under the Act. 29 U.S.C. § 215(a)(3). Oral complaints may qualify. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011). The complaint must be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." Id. An employee need not cite the FLSA by name; the substance of the complaint must provide fair notice of a statutory wage-and-hour concern. In Kasten, the employee challenged time-clock placement that allegedly denied credit for working time. Id. at 4–5. The question here is whether Plaintiff's alleged complaints, considered together with their context, communicated a comparable concern about compensable time or FLSA-governed pay, rather than dissatisfaction with a preferred bonus policy alone.

Plaintiff complained that GNSC calculated its "All Day Pay" early-finish bonus using base-station arrival rather than last-stop time. (FAC ¶¶ 13, 45; Dkt. 18 at 3.) GNSC calls the objection a generalized bonus grievance. (Dkt. 18 at 3.) Plaintiff does not contend that every dispute over a bonus invokes the FLSA. Rather, the allegation concerns the employer's method of measuring time and compensation. The FLSA's overtime regular rate generally includes remuneration for employment, subject to statutory exclusions. 29 U.S.C. § 207(e); 29 C.F.R. § 778.211. A nondiscretionary productivity bonus may affect that calculation when overtime is worked; whether this particular program did so depends on its actual terms and payroll treatment. See *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424–25 (1945). Plaintiff's

position is that the subject and circumstances of his complaints put GNSC on notice of concerns about payment for work and potentially FLSA-governed compensation, not merely a preference for a more generous bonus.

The recipient and circumstances also matter under Kasten. Plaintiff raised the July 24, 2024 issue directly with Edrian Oliver, GNSC's Chief Executive Officer. (FAC ¶ 13; Dkt. 19 ¶ 5.) The CEO's position is relevant to notice, although speaking to an executive does not, by itself, make a complaint FLSA-protected. The Court must consider what was communicated as well as to whom.

Plaintiff further explains the factual context of his pay concerns. Drivers entered hours in ADP and separately reported clock-out times to end-of-day dispatch. Plaintiff noticed differences between hours he entered and times reflected in payroll records, at times approximately three to five minutes, and orally questioned those differences with Rian Oliver, whom Plaintiff identifies as GNSC's payroll manager. Plaintiff's concern was whether he was paid for time he actually worked. These oral communications help explain the content and context of his compensation objections; Plaintiff does not claim every short entry independently proves an FLSA minimum-wage or overtime violation. His IDHR activity concerns alleged discrimination and retaliation and is not offered as a substitute for the wage-related protected activity required by Count VI.

GNSC relies on the FAC's reference to "regular-rate, minimum-wage, or overtime consequences" as proof that the claim depends entirely on future discovery. (Dkt. 18 at 3; FAC ¶ 45.) But the question presented by its motion is whether the conduct already alleged amounts to protected activity. Under Kasten, the inquiry is whether Plaintiff's complaints, in content and context, gave fair notice of asserted FLSA rights. The dated complaint to the CEO about how route-completion time was used in pay calculations, together with Plaintiff's explanation of oral objections to time-record discrepancies, supports his position that he raised a compensable-time

concern rather than simply seeking a better bonus. The ultimate payroll effect, and whether his actual communications met Kasten's standard, remain disputed. Plaintiff requests that Count VI proceed or, alternatively, that he be permitted to plead the specific statements and circumstances more fully.

**B. Count VII States a Title VII Retaliation Claim.**

**1. Exhaustion is an affirmative defense, and the claim is reasonably related to the Charge.**

Title VII's charge-filing requirement "is not jurisdictional." *Fort Bend County v. Davis*, 587 U.S. 541 (2019). It is a mandatory claim-processing rule, id., which places it among the defenses a defendant must raise and establish. A complaint need not anticipate affirmative defenses, and dismissal under Rule 12(b)(6) on an affirmative defense is appropriate only when the plaintiff has pleaded himself out of court. *Chicago Bldg. Design, P.C. v. Mongolian House, Inc*, 770 F.3d 610, 613–14 (7th Cir. 2014).

GNSC correctly identifies the governing test: a plaintiff may bring claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citation omitted). Because most charges are completed by laypersons, a plaintiff "need not allege each and every fact" in the charge. *Id.* A claim is reasonably related where it "can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Huri v. Office of the Chief Judge*, 804 F.3d 826, 831–32 (7th Cir. 2015). At a minimum, the charge and the complaint must "describe the same conduct and implicate the same individuals." *Cheek*, 31 F.3d at 501.

The Charge here satisfies that test. It does not describe a single discrete event. It describes a course of retaliatory conduct by GNSC management that began after Plaintiff's IDHR complaint and continued until his termination:

> "After that filing, my working conditions worsened and management became increasingly hostile. . . . The retaliation continued through my termination on February 10, 2025. . . . I believe these actions were retaliation for my prior IDHR complaint . . . ." (Dkt. 18-1.)

The Charge does not identify the University, MSL program, or recommendation. (Dkt. 18-1.) Plaintiff does not claim otherwise. The October 2024 recommendation incident preceded Plaintiff's April 2025 EEOC Charge. He does not invoke a post-charge retaliation exception; he argues that Count VII concerns the same alleged course of management retaliation described in the later Charge. (FAC ¶¶ 8, 50.) An investigation of the Charge's claimed worsening conditions and continuing management hostility could reasonably have examined Oliver's October 2024 performance-related communication made in response to Plaintiff's recommendation request. This is a disputed claim of factual relatedness, not an assertion that the Charge expressly described the recommendation.

Plaintiff describes texted, short-notice dispatch-wave changes, lengthy rural assignments, and loading delays as context for the Charge's working-conditions allegations and his questions about performance evaluations. He does not present a new sex-discrimination claim or contend that those conditions alone show retaliatory intent. Nor does his IDHR intake submission, without more, prove that GNSC knew of it or that it became a formal charge. For Count VII, Plaintiff relies on opposition to alleged discrimination, not on the distinct wage complaints underlying Count VI or on injury-accommodation requests alone.

The Charge attributes retaliation to GNSC "management"; Oliver is its CEO. (Dkt. 18-1; Dkt. 19 ¶ 5.) Plaintiff relies on this link together with the alleged course of conduct, not merely the common employer. *Cheek* requires overlap in conduct and persons; distinct incidents are not exhausted simply because they concern the same employer. 31 F.3d at 501–02. Plaintiff submits that the recommendation incident was reasonably related to the described retaliation. If the Charge is too general to include it, Plaintiff seeks relief without prejudice to the extent permissible; elaborating a complaint cannot rewrite an earlier administrative charge.

**2. Count VII is not speculative.**

GNSC argues that Count VII rests on an information-and-belief allegation about a document Plaintiff has not seen. (Dkt. 18 at 4–5.) GNSC concedes that information-and-belief pleading is permitted for facts peculiarly within the opposing party's knowledge. (*Id.* at 4.) "Where pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed." *Brown*, 398 F.3d at 914 (citation omitted). The Seventh Circuit has applied that principle after *Twombly*, recognizing that information supporting such allegations is often available only to defendants. *Huon v. Denton*, 841 F.3d 733 (7th Cir. 2016).

The contents of the communication to the University are principally within GNSC's knowledge. GNSC's Answer identifies a "memorandum of record dated October 11, 2024, of Plaintiff's trailing six week performance" and asserts a privilege defense concerning communications to the MSL program. (Dkt. 19 ¶ 32 & Aff. Def. 5.) Those positions confirm that a performance-related communication occurred; they do not admit it was false, negative, or retaliatory. Plaintiff also alleges that the University cited "recommendations" among the considerations supporting its denial. (FAC ¶ 32.) Together with the pleaded recommendation request, these circumstances support Plaintiff's request to test the information-and-belief

allegation through discovery, though the contents and causal effect of the memorandum remain contested.

The conversation with Oliver also supplies context beyond the existence of the memorandum. Plaintiff discussed his actual recommendation request with GNSC's CEO before the company provided a performance-based communication to the MSL program. His "ball is in your court" response, understood by Plaintiff as a reference to following company rules, helps explain why Plaintiff questions whether that later submission was neutral. It does not, by itself, establish that Oliver knew of Plaintiff's IDHR complaint, that the memorandum was false, or that retaliation motivated it. Those matters are disputed; the exchange supports Plaintiff's account of the surrounding circumstances.

Finally, GNSC's Motion does not argue that the conduct alleged in Count VII was not a materially adverse action, or that Plaintiff failed to plead a causal connection between his protected activity and that conduct. (See Dkt. 18 at 3–5.) Plaintiff therefore responds to the grounds actually raised in the opening Memorandum and does not concede any other element. A new ground ordinarily should not first be advanced in a reply. See *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009). Count VII should not be dismissed.

**C. Count XI States a Claim for Tortious Interference With Prospective Economic Advantage.**

Under Illinois law, a plaintiff must allege (1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) the defendant's intentional and unjustified interference that prevented the realization of the expectancy, and (4) resulting damages. *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 511 (1991); *Voyles v. Sandia Mortg. Corp.*, 196 Ill. 2d 288, 751 N.E.2d 1126, 1133 (2001). Count XI is a common-law tort

claim. It rests on GNSC's alleged intentional communication of false or misleading information to a third party, the University, to defeat Plaintiff's expectancy. (FAC ¶ 60.) That claim arises from the general common-law duty not to interfere intentionally and without justification in another's prospective relationships through false or misleading statements, a duty that exists independently of any employment statute.

**1. Plaintiff alleges a reasonable expectancy.**

GNSC argues that Plaintiff lacked a reasonable expectancy because admission was discretionary. (Dkt. 18 at 5.) Illinois requires an objectively reasonable prospect of a valid business relationship, not a guarantee. *Anderson v. Vanden Dorpel*, 172 Ill 2d 399, 406–08 (1996). Plaintiff identifies a pending application to a specific program, an employer recommendation requested for that application, and a denial that cited recommendations among its considerations. (FAC ¶¶ 32, 60.) He contends that these facts describe a concrete opportunity. He does not assert that an application by itself establishes a protected business expectancy; the character and reasonableness of the alleged educational expectancy remain disputed.

*Anderson* held that an allegation of being the "leading candidate" for a job was insufficient, but did not require a firm offer in every case. 172 Ill. 2d at 406–08. Plaintiff acknowledges the discretionary admissions process and that *Anderson* poses a substantial issue. He distinguishes a mere aspiration from his identified pending application, to which GNSC supplied a performance memorandum. (FAC ¶¶ 32, 60; Dkt. 19 ¶ 32.) If more facts are required to show a legally cognizable business expectancy, he alternatively requests leave to amend.

**2. The interference allegations are not speculative.**

GNSC's speculation argument on Count XI repeats its argument on Count VII. (Dkt. 18 at 5–6.) It fails for the same reasons Federal pleading standards govern this claim, and under

them information-and-belief pleading is proper where the relevant facts are within the defendant's control. *Brown*, 398 F.3d at 914; *Huon*, 841 F.3d 733. GNSC admits it sent a performance memorandum and claims a privilege over its communications to the program. (Dkt. 19 ¶ 32 & Aff. Def. 5.) The University cited recommendations as a basis for its decision. (FAC ¶ 32.) Those facts identify an actual communication and a basis for Plaintiff's inference; whether the content was misleading, was intended to interfere, or caused the denial remains disputed

That meeting is also relevant to GNSC's knowledge of the specific opportunity. Oliver personally discussed Plaintiff's request for a recommendation for the MSL program, and GNSC admits that it later sent the program a performance memorandum. (FAC ¶¶ 32, 60; Dkt. 19 ¶ 32.) The exchange supplies circumstantial context for Plaintiff's interference theory. It is not independent proof that the memorandum was misleading, that Oliver intended to prevent admission, or that the University would have admitted Plaintiff absent the communication.

Plaintiff further questions the reliability of the performance measures discussed in connection with his recommendation request. He describes delayed loading carts, packages placed out of delivery sequence, return packages he says he could not control, lengthy rural routes, and last-minute changes in departure waves. Plaintiff contends these operational conditions could have affected delivery scores without accurately reflecting his individual performance. He does not claim that the conditions alone establish intentional score manipulation or reveal what the October memorandum said. The point is that the circumstances give context to his challenge to the performance-based communication; its contents, accuracy, intent, and effect on the University's decision remain disputed.

**3. GNSC misstates the causation standard.**

GNSC asserts that causation fails because the recommendation was not alleged to be the "sole, primary, or significant reason" for rejection. (Dkt. 18 at 6.) Illinois requires that intentional

interference cause the loss of a protected expectancy; its analysis includes both but-for and proximate causation. *Grako v. Bill Walsh Chevrolet-Cadillac, Inc.*, 2023 IL App (3d) 220324, ¶ 53. It does not impose a separate sole-cause requirement. Plaintiff alleges that GNSC sent performance information to the University, which cited recommendations among several admissions considerations. (FAC ¶ 32; Dkt. 19 ¶ 32.) That is a factual link, not proof that the communication changed the result. Read with the FAC's allegation, on information and belief, of misleading content and intentional interference (FAC ¶ 60), Plaintiff contends the connection makes causation plausible. If the Court requires more facts addressing the University's reliance or the likelihood of admission but for the communication, Plaintiff seeks leave to amend.

## ALTERNATIVE REQUEST FOR LEAVE TO AMEND

If the Court concludes that any challenged count is insufficiently pleaded, Plaintiff respectfully requests that the dismissal be without prejudice and that he be granted leave to file a Second Amended Complaint within twenty-one days. Leave to amend should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). A plaintiff whose complaint is dismissed under Rule 12(b)(6) ordinarily should be given at least one opportunity to amend unless amendment would be futile. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). This principle applies with particular force to pro se litigants. See *Erickson*, 551 U.S. at 94.

Plaintiff could clarify facts bearing on each challenged count without adding a new theory: for Count VI, the actual content, recipients, and timing of complaints concerning unpaid working time and FLSA-governed compensation; for Count VII, the conduct, individuals, and knowledge linking the recommendation incident to retaliation described in the EEOC Charge, without changing that Charge's contents; and for Count XI, the nature of the prospective business

expectancy, intentional interference, and but-for and proximate causation. Plaintiff preserves this alternative request for leave; a separate motion seeking leave would include a complete proposed Second Amended Complaint. Additional pleading detail would not change the contents of the earlier EEOC Charge. Any amendment remains subject to Rule 15 and the Court's assessment of futility and prejudice.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny Defendant The Good News Services Corp.'s Motion for Partial Dismissal (Counts VI, VII, and XI). In the alternative, Plaintiff requests that any dismissal be without prejudice and that Plaintiff be granted twenty-one days to file a Second Amended Complaint.

Dated: October 16, 2026

Respectfully submitted,

s/Ty J. Bushur
Ty J. Bushur, Plaintiff, pro se
Mason, Illinois
Telephone: 815-317-6510
tybushur@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2026, I served a true and correct copy of Plaintiff's Response in Opposition to Defendant The Good News Services Corp.'s Motion for Partial Dismissal (Counts VI, VII, and XI) by electronic mail, pursuant to each counsel's written consent to electronic service, upon the following attorneys:

**Counsel for Defendant The Good News Services Corp.**
Heidi K. Durr
heidi.durr@ogletree.com

**Counsel for Defendant Amazon Logistics, Inc.**
Stephanie Sweitzer
Stephanie.Sweitzer@morganlewis.com

s/Ty J. Bushur
Ty J. Bushur, Plaintiff, pro se
Mason, Illinois
Telephone: 815-317-6510
tybushur@gmail.com